William A. HODGSON, Appellant,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare.

No. 13744.

United States Court of Appeals
Third Circuit.

Argued Feb. 9, 1962.

Reargued Nov. 20, 1962.

Decided Jan. 8, 1963.

Hastie, Circuit Judge, dissented.

Joseph E. Gallagher, Scranton, Pa. (O'Malley, Morgan, Bour & Gallagher, Scranton, Pa., on the brief), for appellant.

Bernard J. Brown, U. S. Atty., Scranton, Pa. (Daniel R. Minnick, Asst. U. S.

Atty., Scranton, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and Mc-LAUGHLIN and HASTIE, Circuit Judges.

BIGGS, Chief Judge.

The action in the court below was brought under Section 205(g) of the Social Security Act, as amended, 42 U.S. C.A. § 405(g), by Hodgson, the claimant-appellant, a former laborer,[1] to review a final decision of the Secretary of the Department of Health, Education, and Welfare, denying him disability insurance benefits and the establishment of a period of disability.[2] Suit for review was then instituted in the court below which granted a motion for summary judgment made by the Secretary.[3] No counter motion for summary judgment was filed by Hodgson. The appeal at bar followed.

A brief statement of the past and present physical condition of Hodgson is in order. There is no substantial difference of opinion as to relevant facts. The difference between the parties lies in their respective interpretations of the Social Security Act under the circumstances of the case at bar. Hodgson is 5 feet 9 inches in height. At one time he weighed 254 pounds; at the time of his administrative hearing he weighed 217 pounds. One of the Secretary's physicians described him as "moderately obese" and asserted that his physical condition would be improved by weight reduction which would permit the successful completion of the two operations referred to immediately hereinafter. There seems to be no doubt that Hodgson is suffering at the present time from prostatitis and a small umbilical hernia and that operations would improve, if not cure, these conditions. Hodgson claims also that two fingers on his left hand are numb but existence of this condition is not conceded by the Secretary. After World War II Hodgson was able to do heavy work without great difficulty.[4] His last employment was with the U. S. Hoffman Machinery Company as a general laborer but on November 23, 1955, while he was loading a trailer, a 750-pound bale of brass shavings rolled off the trailer and hit Hodgson. It is certain that Hodgson had a degree of arthritis in the right leg prior to this accident but there can be no question that because of the blow struck him by the bale he suffered a fracture of the right femur.

The Hearing Examiner reiterated medical findings reporting that Hodgson's right hip showed some limitation of motion and that he lacked 20 degrees of abduction: that adduction was full: but that flexion reached only 75 degrees and that extension was absent on the right: that while there was no internal rotation,

1. At the hearing Hodgson described his own work prior to his incapacity as: " * * * brutal hard labor work, work in the mines and outside. I don't know what they call it, the bull gang, all the heavy work, big heavy fellows, outside."

2. A decision was rendered by the Hearing Examiner but it became a "final decision" by the Secretary when the Appeals Council of the Department of Health, Education, and Welfare, Social Security Administration, denied Hodgson's request for a review of the "referee's" decision. See transcript p. 2, letter of Appeals Council to the claimant-appellant, dated February 24, 1960. The ruling of the Hearing Examiner constituted a final decision within the meaning of the Social Security Act. See Goldman v. Folsom, 246 F.2d 776, 778 (3 Cir., 1957).

3. Hodgson v. Flemming, 196 F.Supp. 659 (M.D.Pa.1961).

4. Hodgson served in the United States Navy in World War II and was receiving at the time of the administrative hearing monthly benefits at the rate of $66.15 a month for non-service-connected disability. Whatever may be the similarity or lack of it between the language of the Act creating pensions for World War II veterans (see 72 Stat. 1136, as amended, 38 U.S.C.A. § 521) and the words of the Social Security Act, we must apply the latter Act. We note also that it was found that Hodgson "Was not under a disability" by the Pennsylvania State Board of Vocational Education on June 13, 1958, reaffirming an earlier decision to similar effect of May 15, 1957, but this fact, though in the record of this case, is not relevant here.

external rotation was full. The right knee showed a range of motion of 180 to 140 degrees. The Examiner found that the "Claimant's major impairment is confined to his right leg and consists of the residuals of a fractured right femur sustained as the result of an accident". He noted as well that Hodgson's right lower extremity (right leg) was found to be from ¾ to 1½ inches shorter than his left and that he walked with a cane. The Examiner stated "[W]e have a well healed fracture of the femur, and a painful, restricted right knee joint, although medical examination of the latter described it as normal with good joint space and smooth articular surface with slight hypertrophic changes".

Dr. Swartz, one of the Social Security Administration's consulting physicians, said that as a result of the accident Hodgson "has some shortening of the right lower extremity and pain and ankylosis of the right knee". But if, as seems to be the case according to the testimony of the appellee's own witnesses, flexion is only 30 degrees in Hodgson's right knee, there must be a major loss of the mobility of the knee since full flexion, viz., extension of the knee joint, is 120 degrees.[5]

The court below concluded that Hodgson had suffered a fracture of the right femur, that there was some shortening of his right leg and that he had had some degree of arthritis for years, but emphasized that Hodgson had been regarded as able to do light work "which would not require him to walk or run". The Social Security Administration's doctors, the Examiner and the court below were of the opinion that if Hodgson could procure a position such as that of elevator operator he would be able to be gainfully employed.

There is evidence in the record that Hodgson suffers pain to a degree that requires him to take salicylates[6] and other medication numerous times during the day. The Examiner minimizes the pain which Hodgson says he suffers by calling it "subjective". The Examiner has found that the claimant sees his doctor once a month. It is agreed that Hodgson was born on June 17, 1907, that he has had a sixth-grade education with no special training in any trade or skill and that he has been a laborer all of his life.

The court below concluded that there was sufficient evidence in the record to support the Examiner's finding that Hodgson could engage in substantial gainful activity and therefore he was not entitled to the benefits of the Social Security Act.

Hodgson seeks an award of disability insurance benefits and the establishment of a period of disability. Section 223(c) (2) of the Social Security Act, 42 U.S. C.A. § 423(c) (2), defines the "disability" which must be shown before one is eligible for insurance benefits as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration". The identical definition in Section 216(i) (1), as amended, 42 U.S. C.A. § 416(i) (1), is applicable under Section 216(i) (2), as amended, 42 U.S. C.A. § 416(i) (2), in determining the "period of disability". Pursuant to Section 215(b), as amended, 42 U.S.C.A. § 415(b), such periods are excluded from the divisor in determining average monthly wages. This is the so-called "disability freeze". See Kerner v. Flemming, 283 F.2d 916, 918 (2 Cir., 1960).

Our duty is to determine whether the court below was correct in holding that there was substantial evidence in the record to support the finding of the Examiner that Hodgson was not precluded by his physical condition from sub-

---

5. See "A Guide to the Evaluation of Permanent Impairment of the Extremities and Back", The Journal of the American Medical Association, February 15, 1958, Special Edition, p. 75.

6. The word employed is "salicylates". We assume that the Hearing Examiner and the testifying doctors are referring to aspirin, a common name for acetylsalicylic acid.

stantial gainful activity.[7] We conclude that the court below has erred in holding that there was substantial evidence to support this determination. As was stated by the United States District Court for the Eastern District of Pennsylvania in Klimaszewski v. Flemming, 176 F. Supp. 927, 931 (1959), "The test for disability consists principally of two parts: (1) a determination of the extent of the physical or mental impairment and (2) a determination whether that impairment results in an inability to engage in any substantial gainful activity". We are of the opinion that the Examiner has determined the extent of the impairment suffered by Hodgson. It is clear that Hodgson at best has an impaired right-leg function because of which he retains only a "residual usefulness" in that leg. That that residual usefulness is small indeed is apparent since he has suffered a major loss of the mobility of the knee. Moreover, the court below noted that Hodgson's personal physician described his arthritic condition as having grown progressively worse since the accident in 1955.

We cannot uphold the Examiner in his conclusion that this physical impairment does not result in inability to engage in substantial gainful activity. The only specific job suggested by the record in which Hodgson might obtain substantial gainful employment is that of an elevator operator.[8] We find nothing in the record to indicate that this possibility is a realistic one. Although it is disputed, there is substantial evidence to the effect that Hodgson is physically capable of performing a job which entails sitting and standing but little walking, such as operating an elevator. But assuming that Hodgson has the physical ability, where is he to find such employment? There has been no attempt to show that this occupation is one in which jobs are open to someone like Hodgson, with his physical limitations and his educational and vocational history. In the absence of such a showing we cannot sustain the denial of benefits to Hodgson. As was said in Klimaszewski concerning the statutory language of Sections 216(i) (1) and 223(c) (2): "The word 'any' [substantial gainful activity] must be read in the light of what is reasonably possible, not of what is conceivable." [9] The possibility of this 55-year-old man obtaining employment as an elevator operator is not shown to be a reasonable one.

We conclude, therefore, first, that the Secretary has applied too strict a standard in this case. Not only must "[t]he capabilities of the individual * * be viewed in context with his own physical, educational and vocational background", Sobel v. Flemming, 178 F.Supp. 891, 895 (E.D.Pa.1959), but also the fol-

---

7. Section 205(g) of the Act, as amended, 42 U.S.C.A. § 405(g) provides, inter alia, that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

8. In his decision, the Hearing Examiner stated merely that in his opinion "claimant is capable of useful unskilled work in many fields other than heavy labor". In so doing, he referred to the following statements, made in medical reports concerning Hodgson: "He is only 51 years old and it would be very possible that he would know how, if he could be trained, to perform a sedentary job adequately. Perhaps some standing job could be accomplished if it didn't move him about too much". "I believe that he could do light work which would not require him to walk or run, such as an occupation as an elevator operator or one in which walking is at a minimum". The court below quoted these opinions in affirming the Secretary.

9. 176 F.Supp., at p. 932. This interpretation is in accord with the view of the statute taken by other Courts of Appeals. See Pollak v. Ribicoff, 300 F.2d 674, 677–678 (2 Cir., 1962); Underwood v. Ribicoff, 298 F.2d 850, 854 (4 Cir., 1962); Ferran v. Flemming, 293 F.2d 568, 570–572 (5 Cir., 1961); Hall v. Flemming, 289 F.2d 290, 291 (6 Cir., 1961); Ribicoff v. Hughes, 295 F.2d 833, 837 (8 Cir., 1961). The decision of the Court of Appeals for the Ninth Circuit in Graham v. Ribicoff, although it upholds the Secretary's determination of no disability, adopts an approach to the statute consistent with that stated in Klimaszewski. See 295 F.2d 391, 394–395 (1961).

lowing question must be asked and resolved: "[W]hat employment opportunities are there for a man who can do only what applicant can do? Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available". Kerner v. Flemming, 283 F.2d 916, 921 (2 Cir., 1960). Second, when the record is tested by the principles set forth above, there fails to appear substantial evidence to support a finding necessary to the Secretary's determination of no disability, viz., that there existed a reasonable opportunity for Hodgson to engage in substantial gainful employment. Neither the bare suggestion in a medical report that the claimant might be able to operate an elevator nor the less specific allusions in the reports to "a sedentary job", "some standing job" and "one in which walking is at a minimum" constitute such evidence. See Pollak v. Ribicoff, 300 F.2d 674, 678 (2 Cir., 1962); Roberson v. Ribicoff, 299 F.2d 761, 762–763 (6 Cir., 1962). Compare Graham v. Ribicoff, 295 F.2d 391, 394–395 (9 Cir., 1961).

The judgment will be reversed and the case will be remanded with the direction to the court below to enter a judgment requiring the Secretary to determine whether Hodgson is able to engage in substantial gainful activity and is entitled to disability insurance benefits in the light of the principles enunciated in this opinion.

HASTIE, Circuit Judge (dissenting).

As a claimant for special status and relief before the Secretary of Health, Education, and Welfare, appellant Hodgson had the burden of proving that he was unable to engage in any substantial gainful activity by reason of medically determinable physical impairment. The medical testimony that Hodgson was able to do light work, considered in the light of his failure to introduce any evidence that the community offered no employment opportunities to men in his physical condition or that employers had refused to hire him because of his restricted physical capacity, provided a substantial basis for the Secretary's finding adverse to the claimant. In such circumstances, I think it was the duty of the district court to sustain the Secretary's determination and it is our duty to sustain the decision of the district court. I do not see how any other result can be reached without disregarding the claimant's burden of proof.

I would affirm on the opinion of the court below. Hodgson v. Flemming, M.D.Pa., 1961, 196 F.Supp. 659.