**Grant H. ROSE, Plaintiff,**

v.

**Robert H. FINCH, Secretary, Department of Health, Education and Welfare, Defendant.**

**Civ. A. No. 68–472.**

United States District Court
W. D. Pennsylvania.

Sept. 15, 1969.

Thomas A. Swope, Jr., of Swope & Swope, Ebensburg, Pa., for plaintiff.

John H. Bingler, Jr., Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

MARSH, Chief Judge.

On December 9, 1966, plaintiff filed with the Social Security Administration an application for Disability Insurance Benefits under §§ 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§ 416(i), 423,[1] alleging that he first became unable to engage in any substantial gainful activity on March 2, 1966. His application was denied by the Division of Evaluation and Authorization and by the Division of Reconsideration, Bureau of Disability Insurance, and at plaintiff's request a hearing was had on January 5, 1968, before a hearing examiner of the Social Security Administration, Bureau of Hearings and Appeals, who also denied plaintiff's claim.[2] On April 12, 1968, the Appeals Council of the Social Security Administration advised plaintiff that his request for a review of the hearing examiner's decision was denied; whereupon, pursuant to § 205(g) of the Act, as amended, 42 U.S.C. § 405(g), plaintiff commenced this action to obtain a judicial review of the decision of the Secretary denying plaintiff's claim.[3] With his answer to plaintiff's complaint, defendant filed a certified copy of the transcript of the record of the proceedings before the Social Security Administration in compliance with § 205(g) of the Act, *supra,* and subsequently moved for summary judgment.

---

1. On the same date plaintiff's wife, Helen R. Rose, applied for wife's insurance benefits and child's insurance benefits on account of plaintiff's alleged disability. These applications are not before the court.

2. At the hearing plaintiff changed his disability date to December 31, 1964.

3. Since the Appeals Council of the Social Security Administration affirmed the decision of the hearing examiner, his findings of fact became the findings of fact of the Secretary under § 205 of the Act.

See: Hodgson v. Celebrezze, 312 F.2d 260, 261 (3rd Cir. 1963), citing Goldman v. Folsom, 246 F.2d 776, 778 (3d Cir. 1957).

Subsection 205(g) of the Act, as amended September 13, 1960, Pub.L. 86–778, § 702 (a), 74 Stat. 924, provides:

"Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Secretary or any vacancy in such office." 42 U.S.C. § 405(g).

Section 205(g), *supra,* provides in its pertinent part as follows:

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

Under § 205(g) and under the Administrative Procedure Act, 5 U.S.C. § 1001 et seq., we are limited to "ascertaining whether on the record as a whole there is substantial evidence to support the Secretary's findings of fact." Goldman v. Folsom, 246 F.2d 776, 778 (3d Cir. 1957); Ferenz v. Folsom, 237 F.2d 46 (3d Cir. 1956). "Our judicial duty therefore is to satisfy ourselves that the agency determination has warrant in the record, viewing that record as a whole, and a reasonable basis in law. [Citations omitted.]" Boyd v. Folsom, 257 F.2d 778, 781 (3d Cir. 1958). See also, Braun v. Ribicoff, 292 F.2d 354, 357 (3d Cir. 1961).

The plaintiff last met the earnings requirements of the Act on December 31, 1964.[4] Therefore, the Social Security Administration could have awarded disability benefits to plaintiff only if he proved that he was disabled, within the meaning of the Act, on or before that date.

Section 223(d) of the Act, as amended, 42 U.S.C. § 423(d), defines "disability" for purposes of governing disability insurance benefits as follows:

"(d) (1) The term 'disability' means—

"(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months;

" * * * * * *

"(2) For the purposes of paragraph (1) (A)—

"(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

" * * * * * *

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

" * * * * * *

"(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.

" * * * *."

The definition of "disability" under § 216(i) (1) of the Act, as amended, 42 U.S.C. § 416(i) (1), is the same.

The above amendments, approved January 2, 1968, are made applicable to the present case by § 158(e) Pub.L. 90–248, 81 Stat. 869, which provides that

4. During the 40-quarter period of January 1, 1955, through December 31, 1964, plaintiff had 20 quarters of coverage as required by § 216(i) (3) (B) (i) of the Act, as amended, 42 U.S.C. § 416(i) (3) (B) (i).

the amendments "shall be effective with respect to applications for disability insurance benefits under section 223 of the Social Security Act, and for disability determinations under section 216(i) of such Act", where the decision in a civil action commenced under § 205(g) has not become final before the month of their enactment.

We have reviewed the record upon which the Appeals Council based its decision and conclude that on the record as a whole, the Secretary's decision that the plaintiff was not disabled within the meaning of the Act, on or before December 31, 1964 is supported by substantial evidence.

Plaintiff, who at the time of the hearing was 47 years old, had subjective complaints of shortness of breath (due to silicosis), pains in the hands and wrists (due to arthritis) and vertigo (dizzy spells). Reports of the examining physicians corroborated these complaints. Dr. Hoffman, on December 12, 1966, reported that plaintiff had numbness and tingling in his arms and hands and noted that plaintiff had a dizzy spell in 1964 at his daughter's wedding. On the same day, Dr. Rosenbaum reported numbness and pain in plaintiff's wrists, attributable to arthritis, which had been progressively worsening since 1965 with resulting restricted motion, and dyspnea on slight exertion. According to Dr. Rosenbaum, the dyspnea had been bothering plaintiff for "over one year" (R., p. 189). Joel Goldman, M.D., conducted ventilation studies of plaintiff which showed restrictive lung disease on June 2, 1967. He diagnosed plaintiff's condition as silicosis and pulmonary fibrosis and concluded at that time that he was permanenty industrially disabled.

■ At the hearing a specialist in general surgery, Dr. Lovette, testified as an expert witness. It was anticipated that he would relate plaintiff's impairments back to the period when he met the earnings requirements of the Act.[5] We have carefully reviewed his testimony and have concluded that plaintiff failed to sustain his burden of proving that he was disabled on or before December 31, 1964. Dr. Lovette did conclude that plaintiff was disabled at that time due to a combination of conditions, but his conclusion appears to be based on mere speculation rather than on objective medical evidence. Dr. Lovette did not examine plaintiff. He based his opinion on the reports of the other physicians and his observation of the plaintiff at the hearings. His testimony relating to plaintiff's physical condition in 1964 can be summarized as follows:

1. Plaintiff had silicosis in 1967. Prior to 1967, he had worked in the mines and had been subject to coal dust for ten years. Although there is no objective evidence that silicosis existed in 1964, there is a presumption that the silicosis existed at that time (R., pp. 74–75).

2. There was objective evidence of arthritis in plaintiff's hands in 1967. Plaintiff went to Dr. Rosenbaum in connection with pain in his hands as early as 1963. Therefore, plaintiff must have had moderately severe arthritis in his hands in 1963 (R., p. 85).

■ These conclusions are not supported by any objective evidence, and no presumption is available in support of the first conclusion.[6]

Plaintiff also suffers from an emotional disorder. Dr. Hoffman noted that plaintiff appeared "emotionally unstable" on December 12, 1966 (R., p.

---

5. See f.n. 4, supra. At an initial hearing, held November 16, 1967, it was agreed that a continuance be allowed so that expert testimony on this facet of the case could be procured and so that plaintiff could be evaluated by a psychiatrist.

6. There is a presumption that an established condition continues to exist in the future, Hall v. Celebrezze, 314 F.2d 686 (6th Cir. 1963); as distinguished from a presumption that a condition existed before it is established by competent evidence.

185). Thomas M. Dugan, M.D., the only psychiatrist who examined plaintiff, found that he "has a psychoneurosis of a mixed type manifested by anxiety, depression and somatic complaints." (R., p. 222).

Dr. Lovette, while admitting that he is not a psychiatrist, testified that these reports, when read together with plaintiff's testimony of fainting spells and pain in the hands, show that plaintifff suffered from *severe* psychoneurosis in 1964, despite the fact that fainting can be attributed to many causes other than psychoneurosis, and none of the treating physicians saw any connection between plaintiff's sore hands and his emotional condition. Furthermore, Dr. Rosenbaum, on October 13, 1967, reported that plaintiff has suffered from hypotension (low blood pressure) since 1963 (R., p. 199). The hearing examiner noted that this condition might cause plaintiff's fainting (R., p. 82).

There is additional substantial evidence contradicting Dr. Lovette's opinion and supporting the Secretary's decision.

Plaintiff was a coal miner most of his working life. He was laid off in 1959 when the mine in which he had been working was shut down. Thereafter, in September, 1965, after he allegedly became disabled, he began working for Horowitz Coal Company as a coal shaker. Although plaintiff testified that he noticed the symptoms of dizziness and pains in his chest when he started working at Horowitz in September, 1965, he also testified that there were no complaints about his work, and that his termination there was caused by the shutting of the mine in March, 1966, and not by any physical inability to do the work. He then secured employment in October, 1966, at the Dell Coal Company. He was forced to quit this job less than two months later because he could not perform the functions required of him. Although working after the beginning date of an alleged disability is not necessarily probative of an ability to engage in substantial gainful employment, Wiley v. Celebrezze, 244 F.Supp. 504 (W.D. Mich.1965); Lightcap v. Celebrezze, 214 F.Supp. 209 (W.D.Pa.1962); Randall v. Flemming, 192 F.Supp. 111 (W.D.Mich. 1961), it is our opinion that plaintiff's employment with Horowitz was evidence that plaintiff could engage in a substantial gainful activity upon which the Secretary was permitted to base the denial of disability benefits, even though a contrary inference might have been drawn from this evidence. *Cf.* Canaday v. Celebrezze, 367 F.2d 486 (4th Cir. 1966); Simmons v. Celebrezze, 362 F.2d 753 (4th Cir. 1966).

Furthermore, the reports of Drs. Rosenbaum, Goldman and Dugan, and of the Veterans Administration (R., p. 207) and plaintiff's statements to representatives of the Social Security Administration, relate that all of plaintiff's subjective complaints, except one fainting spell in 1964, began after he last met the earnings requirements.

The hearing examiner carefully scrutinized Dr. Lovette's testimony in support of a finding of disability, but rejected it in view of the other evidence before him. In the circumstances, we hold that his evaluation of the evidence was not erroneous.

Since the decision of the Secretary of Health, Education and Welfare is supported by substantial evidence, we must affirm it and grant defendant's motion for summary judgment.

An appropriate order will be entered.