**Andrew F. STARVIS, Plaintiff,**

v.

**Robert H. FINCH, Secretary, Department of Health, Education and Welfare, Defendant.**

**Civ. A. No. 69–1209.**

United States District Court,
W. D. Pennsylvania.

Aug. 6, 1970.

Swope & Swope, Ebensburg, Pa., for plaintiff.

Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., for defendant.

## OPINION

GOURLEY, Senior District Judge:

This is an action filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), wherein plaintiff seeks judicial review of the decision of the Secretary of Health, Education and Welfare denying his claim filed on September 4, 1967 for disability insurance benefits and for a period of disability under §§ 223 and 216(i) of the Social Security Act, 42 U.S.C.A. §§ 423 and 416(i).

Plaintiff's application was denied by initial decision of the Bureau of Disability Insurance and upon reconsideration. A request for hearing was granted, and a hearing conducted on April 22, 1969. The Hearing Examiner held that plaintiff was not entitled to a period of disability or disability insurance benefits. Plaintiff filed a request for review of the Hearing Examiner's decision on June 12, 1969, and, on October 14, 1969, said request for review was denied by the Appeals Council. The denial by the Appeals Council became the final decision of the Secretary of Health, Education and Welfare.

A Complaint was timely filed in the United States District Court for the Western District of Pennsylvania pursuant to § 205(g), *supra*. In response, defendant filed an Answer and a certified copy of the administrative transcript. Subsequently, defendant filed a Motion for Summary Judgment. Counsel for the respective parties have filed written briefs in support of their positions on the Motion and agreed to waive oral argument. Upon review of the administrative record, the pleadings, and the briefs of counsel, the Court is compelled to grant the Motion for Summary Judgment.

■ Pertaining to the scope of judicial review, § 205(g), *supra*, provides as follows:

"The Court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. * * *"

Under this section and § 10(e) of the Administrative Procedure Act, 5 U.S.C. A. § 706, the Court is limited to "ascertaining whether on the record as a whole there is substantial evidence to support the Secretary's findings of fact." Goldman v. Folsom, 246 F.2d 776, 778 (3d Cir. 1957).

In denying the claim, the Hearing Examiner made the essential finding that plaintiff, at the time of the hearing, when he continued to meet the special earnings requirements of the Act, was suffering from the following medically determinable conditions: mild to moderate essential hypertension, mild to moderate pneumoconiosis, and mild to moderate osteoarthritis affecting principally the lumbar spine and both knees. He further found that the cumulative effects of each of these conditions, while sufficiently impairing so as to preclude the plaintiff from returning to his former work in the coal mines, nevertheless, did not preclude his ability to engage in substantial gainful activity which would

not require more than light to moderate physical exertion and would not involve considerable kneeling, bending, stooping or squatting in a damp, cold atmosphere. Upon review of the administrative record, the Court finds that there was substantial evidence from which the Hearing Examiner could make these findings.

The term "disability," as applicable to claims for benefits under both §§ 216(i) and 223, *supra*, is defined in § 223(d), as amended by § 158(b), Public Law 90–248, which provides in part:

"(d) (1) the term 'disability' means —

"(1) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;

"* * *

"(2) For purposes of Paragraph (1) (A)—

"(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

"* * *

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

"* * *

"(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.

"* * *."

■ Establishment of a disability which would entitle plaintiff to benefits under the Social Security Act is a two-step process. First, there must be a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months; and second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966); Bujnovsky v. Celebrezze, 343 F. 2d 868 (3d Cir. 1965); Tinsley v. Finch, 300 F.Supp. 247 (D.S.C.1969); Jones v. Cohen, 295 F.Supp. 1302 (W.D.Pa. 1969); Matias Rivera v. Gardner, 286 F.Supp. 305 (D.P.R.1968).

■ When making a finding as to plaintiff's ability or inability to engage in any substantial gainful activity, there are four elements of proof to be considered. They are: (1) medical data and findings, (2) expert medical opinions, (3) subjective complaints, and (4) plaintiff's age, educational background, and work history. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962); Stefero v. Gardner, 285 F.Supp. 898 (E.D.Pa. 1968); Dabravalskie v. Gardner, 281 F. Supp. 919 (E.D.Pa.1968).

Plaintiff, at the time of the hearing, was 59 years of age, married, and the father of a child over the age of eighteen. He received an education through the eighth grade and went to work in

the coal fields at the age of fifteen or sixteen. He testified that he had worked in the coal fields his entire life until August of 1967 when he terminated his employment because of the combined impairments of pneumoconiosis and osteoarthritis of the spine and knees. During the course of his employment in the coal fields, he hand-loaded coal for ten years, set timber back, worked at the face of the mine, drilled holes, shot coal, and was a check weighman for eight years. During the course of his employment in the mines, he had the opportunity to operate some cutting machinery.

Plaintiff testified that he began to experience a difficulty in getting down upon his knees in the mines sometime in the latter part of 1966 and that he attempted to remain with his job and use linament for about a year. The linament only gave him temporary relief, and he found it necessary to cease work in August of 1967. He testified to pains in his knees and hips, his difficulty in standing or sitting for long periods of time, and his difficulty with breathing when exerting himself. He also testified to sharp pains in his chest every once in awhile. He wears a corset and takes three unidentified pills prescribed by an attending physician.

Introduced into evidence was the medical report dated November 28, 1967 of Dr. Bernard McQuillan, a specialist in internal medicine. Dr. McQuillan's diagnosis was osteoarthritis, degenerative joint disease of the lumbosacral spine and knees; chest pain of an undetermined etiology; and pneumoconiosis, anthricosilicosis, stage 3M. In the report, Dr. McQuillan commented that plaintiff's pulmonary symptoms were minimal with little shortness of breath. He concluded that plaintiff was not permanently and totally disabled, i. e., unable to do light work of a general nature, by virtue of the pneumoconiosis. Dr. McQuillan also stated that, absent the aid of knee X-rays, he would be unable to render a diagnosis of disabling osteoarthritis.

Also in evidence were reports made by various specialists to Dr. Joel Goldman, a specialist in internal medicine who had observed plaintiff on monthly visits since September 29, 1967. The report of Dr. J. E. Topper, a radiologist, to Dr. Goldman on October 2, 1967, observed moderate degenerative arthritic changes in the lumbar spine and hip joints and mild degenerative arthritic changes in plaintiff's knees. This report indicated no significant changes in this arthritic condition from June 2, 1967. Dr. Topper's report to Dr. Goldman dated January 30, 1968 observed in plaintiff mild pulmonary fibrosis. It was also observed in this report that no change had occurred since June of 1967. In a report to Dr. Goldman dated January 30, 1968, Dr. J. C. Cwik, an anesthetist, concluded from ventilation studies that plaintiff had mild restrictive and obstructive respiratory disease.

In a report dated August 5, 1968, Dr. Joel Goldman observed that plaintiff exhibited symptoms of severe pain in the lumbar spine and both hips since 1967. In this report, Dr. Goldman stated that he had been treating the plaintiff for osteoarthritis since 1967 but that plaintiff did not seem to be improving very much. His diagnosis was osteoarthritis, silicosis, and pulmonary emphysema.

Plaintiff was examined on January 24, 1968 at the request of the Disability Determination Section of the State of Pennsylvania by Dr. William R. Davidson, a specialist in orthopedic surgery. In evidence was his report of February 1, 1968, wherein he stated that X-rays of plaintiff's knees demonstrated arthritic spurring. He stated that it was to be expected that more degenerative changes would be demonstrated upon surgery. Dr. Davidson concluded that to kneel and work in water would aggravate plaintiff's arthritic condition. However, he rendered the conclusion

that plaintiff could perform other duties around the mine which would not require kneeling or working in water. Alternatively, he could be trained for some other occupation.

Plaintiff also was referred by the Disability Determination Section of the State of Pennsylvania to Dr. Rayford Wright, a general practitioner. The report from Dr. Herbert Kunkle to Dr. Rayford Wright dated September 17, 1968 indicates, as a result of ventilation studies, no functional evidence of restrictive or obstructive lung disease. The report of Dr. Michael Nido, a radiologist, to Dr. Wright on September 17, 1968, indicated upon X-ray a normal chest. Dr. Wright, in his report of September 17, 1968, concluded that the X-ray of plaintiff's heart and lungs was normal and ventilation studies demonstrated normal pulmonary function. However, he stated that due to symptoms of pain in the lumbar region of the spine, plaintiff probably would have some difficulty in returning to his previous work in the mines. He also observed moderate hypertensive disease.

The medical records of plaintiff were referred by the Bureau of Disability Insurance to a medical consultant, Dr. Philip Zieve. Dr. Zieve reviewed the records and concluded from the same that no significant medical impairment existed.

 It is the conclusion of the Court that the foregoing medical evidence in the administrative record constituted substantial evidence from which the Hearing Examiner could properly conclude that plaintiff suffered from the impairments of mild to moderate essential hypertension, mild to ·moderate pneumoconiosis, and mild to moderate osteoarthritis of the lumbar spine and both knees. The evidence established, and the Hearing Examiner so found, that plaintiff's impairments were sufficiently severe to preclude him from more than moderate physical exertion and from work involving considerable kneeling, bending, stooping or squatting in a damp, cold atmosphere. The evidence established, and it was also so found by the Hearing Examiner, that plaintiff was precluded from returning to his former work in the coal mines by virtue of his impairments. Thus, plaintiff sustained his initial burden of establishing disability, and the burden of proof shifted to the Secretary to prove that reasonable employment opportunities were available to him. Bujnovsky v. Celebrezze, 343 F.2d 868 (3d Cir. 1965).

Plaintiff testified that he had not looked for any work since August of 1967 when he terminated his employment in the coal mines. Testifying on behalf of the Secretary with regard to the job opportunities available to plaintiff was Eugene E. Hoffman, Director of Educational Vocational Services for Harmarville Rehabilitation Center. Mr. Hoffman testified upon the assumption posed by the Hearing Examiner that plaintiff suffered from mild to moderate pneumoconiosis combined with mild to moderate osteoarthritis affecting his lumbar spine, hips, knees and hands. This assumption was warranted by the evidence before the Hearing Examiner. It was the conclusion of Mr. Hoffman that plaintiff could do light to medium work. This precluded the work which he had done previously in the mines and limited plaintiff essentially to service occupations. It was observed that plaintiff presented a neat appearance and was interesting in conversation. He was observed to have some mechanical aptitude by virtue of his work as a helper in operating a cutting machine. Mr. Hoffman testified to the existence of various jobs in this category within a 100 mile radius of plaintiff's residence, including the jobs of maintenance man's helper, watchman or guard for industrial or commercial property, janitorial service, attendant in a nursery or greenhouse, trimmer in a local plastic plant, and motel or hotel clerk.

**860**

It is clear that mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available. Hodgson v. Celebrezze, 312 F.2d 260, 264 (3d Cir. 1963); Baker v. Gardner, 362 F.2d 864 (3d Cir. 1966). With respect to a number of the jobs which Mr. Hoffman stated were available to plaintiff within his locality, Mr. Hoffman indicated that he himself had previously placed disabled persons and persons from the same age group as that of plaintiff in those jobs. The evidence presented by Mr. Hoffman was not merely theoretical. It constituted substantial evidence from which the Hearing Examiner could find that reasonable employment opportunities were available to the plaintiff.

With respect to § 223(d) (1) (A) of the Social Security Act, the Court of Appeals for the Third Judicial Circuit has recently said:

"While this Court has stated that this restrictive language imposes a 'very harsh' burden upon applicants for disability benefits, it is clear that we are bound by its wording. Gentile v. Finch, 423 F.2d 244, 248 (3d Cir. 1970)."

The Court is constrained to follow the statutory limitations. In the light of the same, the Court finds that the Hearing Examiner's findings of fact were supported by substantial evidence and that disability benefits were properly denied.

### ORDER

Now, this 6th day of August 1970, upon review of the pleadings, briefs filed by counsel, and the administrative record, the Court hereby orders that defendant's Motion for Summary Judgment be and the same is hereby granted, that the decision of the Secretary of Health, Education and Welfare be and is hereby affirmed, and that plaintiff's Complaint be and hereby is dismissed.